JUDGE BRODERICK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| HAI DONG LI,<br>on behalf of themselves and all other similiarly situated | ) ) | CASE NO.: |
| Plaintiffs, | ) ) | 19 CV 11629 |
| v. | ) ) | Judge: |
| ALIBABA GROUP HOLDING LTD., | ) ) | **COMPLAINT AND JURY DEMAND** |
| AND | ) ) | |
| ANT FINANCIAL SERVICE GROUP | ) ) | |
| AND | ) ) | |
| JACK YUN MA, DANIEL YOUNG ZHANG, JUNGONG SUN | ) ) | |
| Defendants. | ) ) | |

Plaintiff, Hai Dong Li, on behalf of himself and all others similarly situated, hereby file a verified complaint against the above-referenced Defendants as follows:

### INTRODUCTION

1. Plaintiff brings this action against all above- referenced defendants to seek compensation as a result of fraudulent deceit, breach of contract, fraud/ Intentional Misrepresentation, invasion of privacy, etc.,

2. Alibaba is one of the world's biggest e-commerce platform. On September 19, 2014, Alibaba went public and did initial public offering, raising $25 billion in New York, United States, which is the largest offering in the history of the New York Stock Exchange.

3. In conducting its business, Alibaba makes it possible for any businessperson with a computer, whether purchasing officer or owner of a small retail store, to find an international sourcing partner to supply to manufacture products.

4. Alibaba's e-commerce platforms provide products with both Chinese and global consumers, though the majority of its transactions are generated domestically.

5. Its heart is Taobao and T-mall, two Chinese consumer-to-consumer websites, which are much like eBay. T-mall offers merchants official storefronts to consumers in China. Alibaba and AliExpress connect businesses in China with buyers around the world. Alibaba also has a financial affiliate that also runs a leading online payment platform called Alipay.

6. Alibaba was founded by Jack Ma.

7. However, Fraud is and has been a major issue on defendants' site. Defendant Alibaba itself did publicly admit this issue.

8. There is widespread suspicion that Alibaba knowingly makes profits from the sale of fakes on its platforms. including the United States Trade Representative which lists Taobao as "Notorious Market". In fact, in the year of 2011, the company revealed that its employees had colluded with scammers to cheat buyers on the site and caused a huge international scandal that also led to the resignation of Wei Zhe, Alibaba's CEO.

9. Since then, Defendants have implemented various countermeasures against counterfeit products, fraud, and/or internal corruption.

10. Even though some international brands complain that how slow and difficult it is to get fake products removed from Alibaba's website, Alibaba said it has spent tens of millions of dollars on anti-counterfeiting.

11. To ensure consumer confidence, the most notable authenticity guarantee policy defendants have implemented called "1 for 5" compensation.[1]

12. Specifically, paying 5 times the initial purchase amount to consumers if the purchased products are not as advertised.

13. Plaintiff, through Defendant's website and without actual knowledge, had purchased a large amount of leather sofas, complaining towards Defendants regarding online merchants' fraud behaviors.

14. An authentication report later revealed that the leather sofas purchased by Plaintiff are non-genuine as described in Defendants' website.

15. Plaintiff made numerous attempts to contact After sale service and Plaintiff's compensation was refused by Defendant because Defendant claimed the merchants did not sell fake products.

## **PARTIES**

16. Plaintiff, Hai Dong Li, resides at 50 Bayard St, Apt 2R, New York, NY 10013. In addition, Plaintiff is also a user, consumer and online merchant of Alibaba Group.

17. Defendant Ant Financial Services Group Ltd., and Alipay (China) Network Technology Co., Ltd., Ltd. is organized and existing under the laws of the People's Republic of China with registered address located at 18 Wantang Road, Hangzhou, 310000, China, which is an affiliated company with Alibaba and is previously known as Alipay.

18. Defendant Alibaba Group Holding Ltd. is organized and existing under the laws of the Cayman Islands, with its principal address located at 969 West Wen Yi Road, Yu Hang District, Hangzhou 311121, People's Republic of China. Its registered office in the

---

[1] Original Statements from Defendants "假一赔十" or "假一赔五" which translated into "1 for 10" or "1 for 5."

Cayman Island is currently located at the offices of the Trident Trust Company (Cayman) Limited, Fourth Floor, One Capital Place, P.O. Box 847, George Town, Grand Cayman, Cayman Island. In addition, Alibaba Group has a registered agent for service of process in the United States, Corporation Service Company, at 1180 Avenue of the Americas, Suite 210, New York, New York 10036.

19. Upon information and belief, Defendant Jack Yun Ma is the Chairman / Chief Executive Officer of Alibaba having an office located at 969 West Wen Yi Road, Yu Hang District, Hangzhou 311121, People's Republic of China.

20. Upon information and belief, Defendant Daniel Yong Zhang is the Chief Executive Officer and Vice President of Defendant Alibaba having an office located at 969 West Wen Yi Road, Yu Hang District, Hangzhou 311121, People's Republic of China.

21. Upon information and belief, Defendant Jungong Sun was the original director of the general office of the Supreme People's Court, the deputy director of the Department of Information of the Supreme People's Court, the news spokesman. In June of 2016, Jungong Sun quit from the Supreme People's Court and joined Alibaba, became the Chief Executive Officer and Vice President of Defendant Alibaba having an office located at 969 West Wen Yi Road, Yu Hang District, Hangzhou 311121, People's Republic of China.

## **JURISDCTION**

22. This Court has jurisdiction over this case pursuant to 28 U.S. Code § 1332(a)(2) as the parties are completely diverse in citizenship and the amount in controversy exceeds $75,000.

## BACKGROUND

23. Alibaba Group was established in 1999 in Hangzhou, China.

24. On April 15, 2008, Defendants advertised in the Chinese media that translated into "Huang Ruoyi, Taobao vice president said sales costs of Tmall are lower than 10%, in about 5%, consumers' purchase costs have been reduced by at least 15% or more."[2]

25. On June 13, 2011, at Alifest, Defendant Ma Yun stated, "If you don't do E-Commerce, you will regret in five years. Ma Yun can succeed, 80% of young people in China can succeed.[3]

26. On October 10, 2011. Defendant increased annual technical service fee from $6,000 to $60,000, which were protested by around fifty thousand online merchants.

27. On October 17, 2011, Alibaba Group made an announcement that an additional 1.8 billion yuan will be invested in Taobao mall which is used on building it as the mall of "quality" and further support mid-and-small sized online merchants.

28. Taobao mall said it would expand consumer protection and further curb counterfeit activities on the Defendant's platform, it clarified that any merchandise is not in accord with its description on advertisement shall be considered as "fake". In addition, Taobao mall would increase the penalty cost of Merchants' violation, and apply "zero tolerance" policy to the shops which operating products of counterfeit and parallel imports. Once found, sanctions will be applied. In addition, Taobao mall promised that it would establish more public supervision mechanism, increase the strength of inspection system, increase the market threshold of the merchants and attract more high-quality merchants.

---

[2] Original Statement from Defendant "2008 年 4 月 15 日 – 而在淘宝商城，这些商品的销售成本都低于 10%，在 5%左右。"算下来，消费者的购买成本至少降低 15%以上"淘宝网副总裁黄若说。不过，网上购物品质参差不齐。"

[3] Original Statement from Defendant "假如马云可以成功，中国 80%的年轻人都可以成功。"

29. Relying on the promise made by Taobao, Plaintiff opened factory, set up sofa design, organized operating team, and opened two stores at T–mall Taobao from 2010 to 2014. The first store is named as "Diti.cc flagship store" which mainly sells shoes. The second store is named as "Qiaoju furniture flagship store" which mainly sells sofa and bed.

30. However, contrary to the statements made by Ruoyi Huang, Taobao's Vice President, most of the merchants associated with the Defendant's platform were not profitable. The Plaintiff invested and opened an online store on the platform, finding that the operating costs on the Defendant's platform were higher than other e-platforms.

31. Even worse, Plaintiff noticed that it was really difficult to sell products online and Plaintiff had to spend too much on online advertisements.

32. In March 2012, Yong Zhang, the Chief Executive Officer of T-mall, said that there would be more than 100 merchants with annual sales of more than 100 million RMB, the annual sales volume of about 2,000 merchants would exceed 10 million, and the sales volume in 2012 is expected to reach the target of 200 billing.

33. The number of online platform operators is rapidly increasing because the Defendant used unfair means to support a small amount large-sized merchants making money and made a lot of false propaganda, falsely encouraging large amounts of sellers to open online stores.

34. The vicious competition, disordered online platform management, lose internal personnel control caused a series of problems, such as large amounts of counterfeits, false transactions, high advertising costs, false evaluation, which seriously disturb the online-trading environment.

35. Defendant's rule stated that false transaction within ninety-six (96) is allowed and will not subject to penalty. Actually, defendants get huge amounts of profits from false transaction, thus defendants will not regulate behavior in substance, leading to increased amount of false transactions. In view of merchants, false transactions, false positive review can promote their search rank and the cost is much lower than "Clean Out Treasure to Train."

36. Unlike other online retailers, Defendant requires online merchants to spend large amounts of money to maintain website and operate their business.

37. Some mid-and-small sized merchants do not receive support from Defendants and some big sized merchants receive support from Defendants by selling fake products and getting positive comments.

38. In 2018, Defendant disclosed that the capacity to earn profits is three times more than Amazon, which largely comes from medium-and-small merchants advertisement cost.

39. However, large merchants stay at the top of T-mall search lists by selling fake products, dealing falsely and receiving false positive comments and medium-and-small sized merchants stayed at the bottom of T-mall lists and they cannot have sales because they cannot be searched, losing all of their investment, which was inconsistent with Defendant's business model.

40. Actually, the business model the Defendant operates caused many investors to lose large amounts of money according to the statement of many online platform sellers. As a result, the plaintiffs closed his T-mall's online shop before August 2014 because he lost over one million dollars.

41. From 2016 to 2017, the number of merchants which suffered the same operation dilemma and claimed to bankruptcy were over four hundred and twenty thousand. According to social media report, about 80 percent merchants of Defendant's website lost money but defendant falsely revealed that it closed about four hundred and twenty thousand stores which was suspected to sell fake products.

42. For a long time, the problem of counterfeit goods on defendant's online platform has attracted public attention and was questioned by public opinion. The defendant made a promise that it will prohibit counterfeit goods and protect the interests of consumers. Thus, the T-mall officially declared that "Five-time price compensation for one fake product."

43. According to Taobao Announcement, the consumers have the right to supervise the state of operation of Defendants and merchants on Defendants' website.

44. Defendant also harangued to let general public join the activity against fake products at multiple media and social stages. "Knowingly purchase fake products" is protected by law and it is also a legal measure to help Taobao fight for counterfeits.

45. From August to September 2014, the plaintiff purchased leather products from sixteen (16) online shops, which claim their sofas and beds have genuine full grain leather.

46. According to the platform requirements, consumers can take one sample and individually send to a third party to examine the quality of leather for the purpose of verification. However, the results showed that eighty-four (84) of the eighty-five (85) orders purchased by the plaintiff were counterfeit leather.

47. Then the plaintiff submitted the test reports to defendant's after-sales service and requested for consumer protection and compensation.

48. After the plaintiff filed the complaint, Plaintiff received a call from Defendants' after-sales service and Plaintiff required Defendant to take necessary action to punish the seller and sought compensation through the phone.

49. Later, plaintiff found that all his accounts associated with his reported complaints were frozen maliciously by Defendant and even worse, most of Plaintiff's frozen accounts were able to put orders, but all ordered merchandise were not received by the Plaintiff.

50. After Plaintiff's accounts were frozen, the Defendant compulsively cancelled all Plaintiff's pending orders and maliciously disposed Plaintiff's Alipay account funds without plaintiff's authorization.

51. After plaintiffs filed claim against defendant, defendant maliciously froze plaintiffs 7 accounts without proper notice and defendant claimed that plaintiff is a malicious purchaser and plaintiff filed malicious claim.

52. Defendants also claimed that the products plaintiff purchased were not the products sold by Defendants.

53. Later, plaintiffs found that all his accounts associated with his reported complaints were frozen maliciously by Defendant. Even worse, most of plaintiffs' frozen accounts still in process of orders and nine (9) orders were not shipped. (Order numbers as follow: 790256087972656、791033700965612、790310979244730、778659469683532、1069405933676245、792922804281142、789828182142656、790485773384730、793759136513478).

54. According to T-mall rule, one member can have many accounts and they have the right to use their registered Taobao user name, email address, cell phone number and their

registered passwords to log into Taobao. Plaintiffs could not access his order information and request for return and refund after his accounts were frozen, suffering large amounts of losses.

55. Pursuant to their contract, Plaintiff purchased specified goods according to Defendant's description and Plaintiff will put his money at third-party's escrow account (Alipay) before Plaintiff acknowledges the receipt of goods which is consistent with Defendant's product description.

56. According to the Contract, before Plaintiff acknowledges the receipt of goods, the purchaser's order money still belongs to Plaintiff.

57. The provisions of Alipay agreement are as follows:

   a. Alipay is the third-party agent which is authorized by consumers or merchants to pay money or received money;

   b. The ownership of the balance of Alipay account belongs to consumers and Alipay is only authorized to manage the balance;

   c. The agent service of Alipay, which is named as "Alipay secure transaction", means that Alipay will transfer the authorized balance to merchants after consumers confirm to receive the products for resolving the trust issue between merchants and consumers.

58. After Plaintiffs' accounts were frozen, the Defendant compulsively completed all Plaintiffs' pending orders and maliciously disposed Plaintiffs' Alipay account funds without plaintiffs' authorization.

59. According to 2016 Alibaba Group Platform Governance Annual Report, Defendant disclosed that they discovered 5862 malicious complaints accounts at IPP and they maliciously closed all these complaints accounts, which infringed on consumers' interests.

60. According to the Defendant's "Statistical Table", the Plaintiff is the purchaser who bought many products at T-mall online platform and brought lawsuits against other sellers many times, the Plaintiff should be labeled as "Knowingly Buy Fake" and was a malicious litigator.

61. One of the major reasons for plaintiff to refile the case is that in 2014, plaintiffs filed lawsuits against defendants regarding his refund and compensation but defendants did not admit plaintiffs' order products and in view of the difficulty of collecting evidence, plaintiff lost his case. Thus, plaintiff planned to secondly purchase the products from defendants in 2015 and conducted evidence protection procedures.

62. In the case of Yu Hang Min Chu Zi No. 987 and the Zhe 0110 Civil 4505 (2016), and the 2017(Zhe)01Min Zhong No.1049，and the （2017）Zhe Min Shen No.1839，the court concluded that the sofas were found to be made of fake leather, which was significantly inconsistent with the advertisement description. Therefore, merchants' conduct constituted consumer fraud according to the Law of the People's Republic of China on the Production of Consumer Rights and Interests.

63. On July 09, T-mall customer service (0571-81608608) called the plaintiff that T-mall has verified that the plaintiff's inspection report was valid, but only counterfeit brand orders were eligible to be compensated for 1 to 4. Counterfeit materials were not covered by

compensation. This contradicts with the defendant's advertisement that counterfeit materials were deemed the same as counterfeit merchandise, which is fraud behavior.

64. However, Defendant did not put any penalty on these two merchants until now and their stores still operate and sell fake products.

65. In around ten lawsuits, Defendants conspired with merchants to issue the same "statistics table", claiming that plaintiffs used multiple accounts to purchase the same products multiple times and plaintiffs are not general consumers and plaintiffs have the online purchase experience and ability to differentiate in the process of receiving products and sampling products.

66. The Defendant claimed that Plaintiff purchased the products to earn profits instead of daily use and plaintiffs knowingly purchased the fake products and did not violate the law, which constitutes vicious litigation.

67. Defendants used this excuse to help merchants to shirk legal responsibility, which also prove that defendants have actual knowledge regarding the fake products.

68. In 2015, in order to collect evidence of Defendant's illegal conduct, Plaintiff used many accounts and placed around seventy-one (71) orders from the same type of fake products sold by the same merchants.

69. From August 2014 to 2015, the Plaintiff purchased more than 190 orders from 20 merchants (third-party sellers) on the defendant's platform. 146 orders were actually completed, and about 50 orders were cancelled because the defendant leaked information to the merchants and the merchants refused to deliver the goods.

70. On May 28, 2015, Plaintiff filed complaints against Defendant regarding the sale of counterfeit goods by Defendant's online merchants and Plaintiff received response stating that "all reporters are anonymous and the person reported will not be able to access the informant's information."

71. On June 24, 2015, Plaintiff received information from the Alibaba platform operator, Zhenchao Li, threatening Plaintiff to withdraw all his complaints.

72. Plaintiff filed a complaint with the Chinese police department and Plaintiff knew that Defendant disclosed his confidential information to many online merchants who sell fake products.

73. According to the Interrogation Transcript made by Chinese police department, the online platform operator Zhenchao Li claimed that "a number of T-mall merchants received notice that Plaintiffs filed numerous complaints against them. T-mall also disclosed claimant's private information. Defendant provided them with the plaintiff's IP address and name.

74. Plaintiff received information from over ten merchants at the same time, which claimed that merchants send wrong products and required plaintiff to return back products. Some orders are stopped by merchants in the shipping process and it proved that defendants provide assistance with merchants in selling counterfeits.

75. Under the jurisdiction of Chinese court, the Defendant and the operator of the Defendant platform conspire to submit the same "statistical chart" to the court during the hearing, proving that the plaintiff is not entitled to compensation for "knowing-it-is-fake-and-buying-it".知假买假

76. According to Taobao Announcement, consumers are the actual payor to pay for the purchase price.

77. According to T-mall Service Agreement, consumers can refer to any natural person and organizations who purchase the products at T-mall store.

78. However, defendant claimed that in around ten (10) judgments issued by courts, plaintiffs was not the registered purchaser, was not the legal entity which would not be protected by the law.

79. According to the platform requirements, consumers can take one sample and individually send to a third party to examine the quality of leather for the purpose of verification. However, defendant claimed that plaintiff's evaluation report was invalid because the report is valid only when three parties participated, including the merchants in the process of sampling and evaluation.

80. According to Defendant's proclamation, any serious inconsistency of material composition will be regarded as the sale of fake.[4]

81. According to defendant's rule, plaintiff can file complaints regarding fake materials and fake brands through the link of fake brands to protect their interests. However, defendants replied that the merchant is individual brand and did not exist the problem of fake brands. Plaintiffs was only allowed to return instead of fake products compensation.

82. The Defendant's customer service, which has the phone number (0571-88158198) claimed that Plaintiff's compensation claim was not approved by his/her supervisor because through investigation the merchant claimed he shipped wrong goods, which did not satisfy the definition of "fake materials". The operator claimed she/he can only fix the

---

[4] T-mall rule is stating that "serious inconsistency of material composition is regarded as the sale of fake".

problem in regards to the wrong goods but he can not unilaterally judge the seller's liability and approve Plaintiff's compensation claim.

83. When plaintiffs try to claim to refund and return, defendant and merchants refused plaintiffs' claims because the products were destroyed in the processing of sampling and could not be resold.

84. As a result, Plaintiff suffered the loss of large amounts of money and Defendant harmed Plaintiff's interests. The Plaintiff can not reach an agreement with Defendant and Plaintiff sued the Defendant.

85. After Plaintiff filed the complaint at the Yuhang Court in Hangzhou, Defendant spoke to the judge and the judge required Plaintiff to withdraw all of his cases otherwise Plaintiff will lose it.

86. However, Plaintiff did not agree to withdraw his cases because even if Hangzhou Court has jurisdiction over the case, Plaintiff can appeal to intermediate and supreme courts.

87. During T-mall online promotion activities from 2014 to 2018, merchants who sell counterfeit goods were still allowed to participate in the activities even though the Defendant had actual or implied knowledge about the circumstance.

88. Defendants had actual knowledge of merchants' sale of fake products behavior, defendant never put any penalty on merchants and also did not compensate victimized consumers.

89. The defendant assisted the merchants to obtain huge profits from the sale of counterfeit merchandise. The rate of fake goods in about 146 orders purchased by the plaintiff was more than 98%. The total sales volume of orders placed by only 8 product ids

(36372250467, 36952965965, 26563888588, 13179617643, 26536912943, 19884070051, 43955817525, 39882743525) reached 240,000 before April 2018 (the actual number behind was 240,000 victims). With more than $115 million ($114.7 million) in transactions, and more than 10 million merchants (third-party sellers) on Taobao and T-mall, this is just the tip of the iceberg.

90. According to the website information, normally the Defendant has five (5) to nine (9) days to handle consumers' claims; however, Plaintiff reported to the platform after-sales service and the Defendant did not reply Plaintiff within designated time period.

91. Defendant consistently issued false and misleading statement regarding Defendant's business operation, business prospects and also concealed material business information. Defendant engaged in a scheme to deceive consumers and inflated Alibaba American Depositary Shares prices.

92. Even though Chinese government surveillance department issued many relevant laws and regulations regulating online business operation and prohibit merchants who sell counterfeit goods, Defendant colluded with Chinese government and bribed political officials to allow them engage in merchants who still sell counterfeit goods.

93. On January 23, 2015, the State Administration for Industry and Commerce of China revealed that the rate of authentic products on Taobao was only 37.25% and the State Administration for Industry and Commerce of China also revealed that Defendant did not pay enough attention to the illegal operation of Defendant's network trading platform.

94. At the same day, Defendant strongly protested against SAIC's disclosed information and officially complained that Liu, Hongliang, the director of the Internet Commodity Trading Supervision Department, supervised improperly.

95. Finally, the SAIC issued an administrative whitepaper entitled as "Alibaba Group's guidance to work", which led Defendant's shares plummeted.

96. With regard to the administrative white paper, the allegations are as follows:

a) "Under of knowing, should know, intentional or negligent behavior, etc. to facilitate operating without a license, trademark infringement, false advertising, pyramid schemes, consumer infringement, the implementation conditions.

b) Inadequate disposal of commercial fraud. Alibaba platform for long-standing part of the 'China Suppliers' alleged contract fraud, fraud until the economy; there are also some shop on Taobao consumer fraud. Platform operators for similar behavior monitoring, disposal is not in place, after the damage to the interests of equity platform operators operating platform is not completely fulfill the obligations according to the law, requiring the operator platform jointly and severally liable, but often is not supported the existence of commercial bribery.

c) In recent years focused on the outbreak of commercial bribery charges Ali internal staff, suppliers, users and other platforms participant in the 'Lynx flagship store settled', 'together cost-effective', 'train, 'Taobao search Ranking' 'Home billboards', 'promotional activities during major stall' and other improper trading process to reap the advantage of trading opportunities, exclude competitors.

d) Internal staff lax control. In recent years, SAIC easily be made when

investigating the deployment of precursor chemicals Taobao fake donkey-hide

gelatin and net purchases of goods sampling and other special tasks, when the

business sector to provide information to law Taobao shop, we found that there

are violations of the shop Most commodity information is deleted in advance (off the

shelf), Taobao staff allegedly leaked in advance to the illegal shop related information,

resulting in industry and commerce department of passive work."

97. The administrative whitepaper stated Defendant's trademark infringement, false

advertisement, consumers' rights infringement, false transactions, commercial bribe and

contract fraud.

98. The State Administration for Industry and Commerce of China interviewed the

Defendant Yun Ma prior to Alibaba listing on the New York Stock Exchange under

social pressure. In accordance with the administrative requirements, the contents of their

discussions shall be disclosed. However, the Defendant did not disclose their counterfeit

information before listing on the New York Stock Exchange.

99. After the "White Paper", Under social media pressure, defendants claimed that they

actively cooperated with governments and supervisory department across China to fight

against fake products, false transactions, and vicious complaints, trying to promote law

achievement and regulate vicious behaviors through legal means.

100. Mr. Zhang Mao, Director of the State Administration of Industry and Commerce,

discussed with Mr. Ma Yun the so-called "White Paper", which regulated inspection and

investigation on Chinese-concept goods.  Mr. Ma Yun had some opinions on the white

paper, he went to meet and discuss with the Director on January 30, 2015, thereafter the

State Administrative Industry and Commerce cancelled the "White Paper", which was

acclaimed as since "it was released, things developed quite a bit." It made "the user side carried out inspection and investigation on Chinese products.

101. On January 30, 2015, the whitepaper was announced invalid overnight after Yun Ma met the principal of the State of Administration for Industry and Commerce, Mao Zhang.

102. The new *Law of the People's Republic of China on Protection of Consumer Rights and Interests* came into effect on March 15, 2014 has regulations against network platform fraud, stating that an operator who has knowledge about the merchants sell counterfeit goods will jointly liable with the merchants. As a result, there are thousands of injured consumers suing Defendant and relevant merchants and thousands of injured consumers filed complaints with the State of Administration for Industry and Commerce of People's Republic of China.

103. In the Supreme People's Court's Judicial Interpretation and Guidance on Food and Drug, the Supreme Court made it clear that "the ones who are knowing-it-is-fake-and-buying are consumers". Also, in the press conference of the Supreme People's Court held on January 9, 2014, the Supreme Court's spokesman, Mr. Sun Jungong affirmed that: the behavior of "Knowing-it-is-fake- and -buying" does not adversely affect operator's status of consumer or dampen the protections he shall enjoy as normal consumers. Namely, the "Knowing-it-is-fake- and -buying" merchants fall into the category of consumers, theirs rights and interests shall be protected as average consumers.

104. On 06-16-2015, spokesman of the Supreme People's Court, Mr. Sun Jungong, said that litigation of consumer rights and disputes on "professional anti-counterfeiting" and "knowing and buying fake goods" were commonplace these days. In accordance with the

provisions of the Judicial Interpretation of Food and Drug, people's courts at all levels have identified anti-counterfeiters as consumers, strengthening the power of consumer rights protection.

105. The rulings in Hangyu Minchuzi case no. 987 (2015) and Lu 02-mincheng case no. 263 judgment case, adopted a criteria as to whether a party in lawsuit has the status of consumer or not:  consumer products have been divided as production means and livelihood means, consumers who purchase livelihood means shall be protected by the 'laws affording consumer with legal rights and interests.  Therefore, when judging whether or not a merchant is a consumer, his subjective state shall not be elements in the decision, but rather base it on the nature of the goods he purchases, as long as the goods he buys are means of livelihood, he is the consumer referred to in the consumer law. Article 2 of the Consumer Rights and Interests Protection Law: " declared that consumers need to buy, use goods or accept services for their daily consumption, and their rights and interests shall be protected by this Law;

106. Article 2 of the Protection of Consumer Rights and Interests: "The rights and interests of consumers who purchase or use commodities or receive services for their daily consumption shall be protected by this law; if this Law does not provide for, it shall be protected by other relevant laws and regulations", the Law does not define the concept of consumers, but clarifies the scope of consumers protections in Article 62 of the Law, which expounds the rights and interests of consumers of the People's Republic of China shall afforded to the consumers, stipulates that "the purchase and use by farmers of means of production directly used for agricultural production shall be implemented with

reference to this law." The appellant in this case bought the livelihood means, should be recognized the consumer status of professional anti-counterfeit.

107. As to whether professional anti-counterfeiters are consumers, the Supreme Court holds that subjective state of the buyer is not one of the criteria, but the nature of the subject matter the buyer purchased shall be the center of the issue.

108. Second, it is difficult to define professional anti-counterfeiters, even impossible to have a boundary to separate professional anti-counterfeiters from ordinary anti-counterfeiters.

109. Third, fighting counterfeiting is rather a good thing than a bad thing. The laws provide that anti-counterfeiters have the right to claim for punitive damages, indicating that the laws encourage anti-counterfeiting and that anti-counterfeiting have its values. Fighting fake once is good thing, fighting ten times can't be a bad thing;

110. Fourth, even the socially recognized professional anti-counterfeiters cannot be deprived of their identity as consumers as long as they purchase livelihood products;

111. Fifth, the laws cannot be done on its own. Laws that punish fraudulent merchandise behavior and protect food safety will not be implemented by themselves just because they are enacted. The vitality of laws lies in its implementation. Legal provisions are gradually implemented case by case. Without lawsuit, no law can be implemented. Every lawsuit brought to the courts against the food operators violating food safety standards will more or less urge operators as well as consumers to pay more attention to food safety, so as to further implement the provisions of the applicable laws.

112. When all consumers become involved in anti-counterfeiters, the act of manufacturing and selling fake goods loses its market. Without making fake and selling fake, the phenomenon of counterfeiting naturally disappears. The purpose of anti-counterfeit action may be for profits, most people brought lawsuit are motivated for financial gains to certain extent, no one going to the courts purely for experiencing the legal proceedings, the courts cannot reject the litigant's claim only because one of their purposes is to make a profit.

113. Interests are divided into legitimate interests and illegal interests. The courts protect legitimate interests and impede illegal interests. Counterfeiting, selling fake is to obtain illegal interests, while anti-counterfeiting is to obtain legitimate interests, therefore, it shall be beyond reproach as well as consumers. Asking the courts to support the interests of making and selling fake products negates the interests of fighting fake products. Some people turn the gun of the law on the counterfeit fighters and do things that make the counterfeit fighters hurt and make the counterfeiters and the counterfeit sellers happy. This runs against the basic will of the people, because everyone is a consumer. Consumer Rights and Interests Protection Law reflect the will of the people. Fighting counterfeit also needs professional, if the person who fights fake for many times can be defined as professional counterfeit fighter, then professional counterfeit-fighter is the advocate of consumers, deserves the legal protection provided by consumer rights and interests law.

114. The issue as to whether the appellant in this case deserves the protection average consumer do if he is a knowledgeable person is addressed by the Supreme People's Court, when it adjudges the dispute on food and drug quality problems. In the lawsuit, the buyer bought the food and drug with the knowledge of the quality problems existed in these

food and drug, the Supreme Court ruled in favor of the buyer. Obviously, if informed consumers are not allowed to crack down on counterfeiting, this will result in such a result: unwitting consumers is unlikely to impact, and informed consumers are not allowed to crack down on counterfeiting, then the act of making and selling fake goods will be getting very popular. Moreover, if well-informed consumers do not have the right to fight counterfeit, the Law of Consumer Rights and Interests Protection could turn out to be amulet for counterfeiters.

115. In "ALIBABA PLATFORM GOVERNANCE ANNUAL REPORT 2016", the defendant disclosed that the current legal system could not effectively establish the healthy Internet ecology and failed to nurture development of Internet ecology.  And also said that they would actively cooperate with government agencies at all levels and called on the government to improve the system of laws and regulations. Contrary to what they advocate on the public, the defendant amended "Special Instructions" in the T-mall authentic Guarantee Service Standard on June 24, 2016, which moderated the scope of consumer protection and prevent the four-times' compensation from applying to merchants for so called "non-consuming" purpose. It was obviously an "Imparity clause" that put themselves above the law and intended to exclude some merchants from consumer protection of the purchase.

116. On June 30,2016, the General Administration of Industry and Commerce issued the updated Regulations on the Implementation of the Law on the Protection of the Rights and Interests of the Consumer (Draft for Comments), which clearly ruled out the protection for the anti-counterfeiter, even they purchase livelihood means. The rights and

interests of natural persons, legal persons and other organizations for the purpose of profit are not covered by this Ordinance anymore.

117. After the white paper incident, the defendant bribed the former press spokesman of the Supreme Court Jungong Sun by posting him an office.

118. Mr. Sun Jungong, vice president of public affairs in Alibaba, right before he was employed by Alibaba, worked for Supreme People's Court as the Supreme Court's press spokesman for seven years. He has specialized in judicial interpretation, judicial policy research and judicial news publicity work. He is a crossover elite that combines expert judges and media people.

119. Right after Mr. Sun Jungang joined Alibaba, Alibaba amended and validated the "Special Instruction" in the T–mall genuine product security service specification", which modified the scope of consumer protection, excluding some knowledgeable professional merchants from the consumer protection.

120. Sun Jungong, currently serving as vice president of public affairs in Alibaba, right before he was employed by Alibaba, worked for Supreme People's Court as the Supreme Court's press spokesman for seven years, also as Deputy Director of the Information Bureau and other important government posts. He has specialized in judicial interpretation, judicial policy research and judicial news publicity work. He is a crossover elite that combines expert judges and media people.

121. "Disciplinary regulations of the communist party of China" illuminates that the party leading cadres in violation of relevant regulations to accept immediately after leaving office under the jurisdiction of the district and the business enterprise within the scope of

employment, or in violation of relevant provisions of the act as the board of directors of

the listed companies, fund management companies, independent supervisors and other

duties, belong to the disciplinary offence, will be subject to discipline sanction.

122. In "The opinions on further standardizing the part-time (full-time) employment chief

Party and government officials in enterprises" of the state supervisory commission of the

People's Republic of China, in-service chief Party and government officials cannot have

part-time (full-time) employment. Within three years after resigning from public office,

he/she shall not take part-time jobs (full-time) in enterprises within the jurisdiction of

his/her original post or within the scope of business, nor shall he/she engage in profit-

making activities related to the business under his/her original post.

123. "Law on Chinese Civil Servants" stipulates that those who have not completed the

minimum length of service prescribed by the State governments shall not resign from the

public office and transfer to private entities which could benefit from the incumbent of

special posts without satisfying required confidentiality period. The "Law on Judges"

also restricts the "re-employment" of judges right after they leave their posts, including a

retired judge who shall not act as an ad hoc agent or serve for the parties which have

lawsuits pending in the People's Court system. It is well-known that the Alibaba, the

Defendant, has a large number of litigation cases in the courts at all levels.

124. Right after Sun Jungang joined Alibaba, Alibaba amended and validated the "Special

Instruction" in the T-mall genuine product security service specification", which

modified the scope of consume protection, excluding some knowledgeable professional

anti-counterfeiter from the consume protection. Alibabab meddles with the legislations

in the field, involved in revising and drafting the laws and regulations in the e-commerce industry. On August 5, 2016, "Regulations on the implementation of the Protection of Consumer Rights and interests (draft for examination)" is promulgated. In the Article 2 of the regulation proposal, natural persons, legal persons or other organizations for the purpose of profit to buy and use goods or accept services are not applicable to this regulation, which is exactly the same and echoes other regulations influenced by Alibaba, the Defendant in this litigation, obviously tend to terminate the legal rights previously enjoyed by "professional crack down on counterfeit goods" and those people who "Knowing- it-is-fake-and-buying" . .

125. After the whitepaper was issued, the Defendants bribed Yang, Guoxiu, deputy of the National People's Congress, and many top-tiered officials of the State of Administration for Industry and Commerce of China.

126. The Defender conveyed sale profits to the People's Congress representative, Ms. Yang Guoxiu, through his store set up on the T-mall platform, named; "Guoxiu flagship" store. Ms. Yang Guoxiu, deputy to the Fifth session of the 12th National People's Congress (NPC).

127. Based on Ms. Yang Guoxiu's disclosure on the public media, "80%-90% of the products sold from Guoxiu Store on the Tmall Platform, are exported products." Due the bigger gap between whole sale price and retail price of exported products than domestically-consumed products, the T-mall helped Mr. Yang Guoxiu rip off huge sale profits from the customers on the T-mall platform.

128. Ms. Yang, Guoxiu claimed that, "we open the business late but we soon got to the front. Less than two months after the launch of T−mall's flagship store, the sales volume reached more than 30 million. I am so happy. Every entrepreneur presented has helped us a lot."   However, the sale data of all the products of T−mall online showed a different number than Mr. Yang Guoxiu claimed, it showed that the sale amount did not exceed RMB 10 million yuan from the opening of the store in 2015 to 2019. On June13, 2017, the National people's Congress (NPC), the legislation government body in the China, along with the State Administration for Industry and Commerce of China submitted the regulation proposal Bill No. 5990, proposed that in addition to food, it was proposed to gradually curb the profit-making and anti-counterfeiting behavior of professional anti-counterfeiters. The representative's suggestion raises questions. Ms. Yang Guoxiu, Deputy to the Fifth Session of the 12th has her own business on the Alibaba e-commerce platform, made unreasonable amount of profits from it, She shall be excluded from the legislation process regarding to the e-commerce, has been the key personals in enacting the regulation in the industry, which run against the basic principals in modern legal system.

129. On May 19, 2017, the Supreme People's Court, Alibaba's current Vice President, Mr. Sun Jungong's previously served for seven years, issued the recommendation No. 5990 of the Fifth session of the 12th Chinese people's Congress (legal Affairs letter [2017] No. 181) made by General Administration of Industry and Commerce, in which actively considered the proposal No. 5990 put forward by Ms. Yang Guoxiu and other representatives from General Administration of Industry and Commerce. The recommendation suggests that the judicial proceeding shall take reference of the judicial

interpretation, which do not support "punitive damages" in the field other than food and medicine.  In this letter, the interpretation of "knowing-it-is-the-fake and buying" excludes food and medicine from the consumer protection, in line of the regulations in Article 2 of the Implementation of Consumer Law (draft for examination) and the "Special statement" in the T-mall Code for authentic Security Services, which promise to protect the consumers, while consider "knowing-it-is-the-fake and buying" in blatant violation of the legislative purpose and original intention of the Consumer Law.

130. In March 2017, Ms. Yang guoxiu, a Deputy to the National People's Congress at the fifth session of the 12th National People's Congress, and the state administration for industry and commerce of China, submitted motion no. 5990, saying that apart from food, they proposed to gradually curb the profit-seeking anti-counterfeiting activities of professional counterfeit fighters. It can be clearly seen that the actions of the SAIC intend to serve the Defendant, aim at deterring consumers rights protection and restricting the protection for anti-counterfeiters.  The State Administration for Industry and Commerce is the regulatory unit, should stand in the line consumers, and regulate the enterprises in the industry, such as Alibaba.  The relationship between the State Administration for Industry and Commerce and Alibaba shall be the cat and the mouse.  The situation in current China, The cat unexpectedly become the protective umbrella of the mouse. .

131. It also creates artificial barriers to claim for "punitive damages" in the field of consumption.  In essence, they are sheltering "counterfeiters" in disguise.  In fact the legislatures in nature causes wrong guidance to law enforcement and judicial proceedings at the grass-roots level.  In letter 181, the three main bodies, one is the General Office of the Supreme people's Court, the former employer of Sun Jungong, the second is the

General Administration of Industry and Commerce of China, and the third is Yang

Guoxiu, deputy to the National people's Congress (who opened the Guoxiu flagship store

in T-mall).

132. All of them have direct illegal interests with Alibaba and Ma Yun, the Defendant. It was

the defendant who bribed Yang guoxiu, a deputy of the National People's Congress,

colluded with the State Administration for Industry and Commerce, manipulated the

Supreme People's Court and finally formed the NO. 181 Administrative Letter guiding

the judicial proceedings. The guidance distorts the facts, violate the fairness and justice

of the law, and obviously does not support to the public interest. The public can see that

special interest groups circumvent the constraints of the rules of law in order to seek

personal interests. In fact, they use their power to seek private interests for the defendant

through the exercise of their powers (negating the legality of the act of "knowing-it-is-

fake- and-buying" and "professional anti-counterfeiting", protecting the interests of

making and selling counterfeits).

133. It is the Defendant who use the power of legislative interpretation to seek personal

benefits for the Defendant, and it is the corruption of legislation and judicial system,

making them serve the Defendant specifically.

134. China Politics and Law Committee ("CPLC"), is a organization led by the Communist

Party of China at all levels, it dictates the judicial institutes of the people's Republic of

China at all levels. Its function is to guide and coordinate the work of the judicial

institutes of the people's Republic of China, such as the people's courts, the people's

procuratorates, the public security organs, the state security departments, and judicial

administrative departments such as the work of judicial institutes of the People's Republic of China.

135.  On October 21, 2016, the Defendant, Mr. Ma Yun was appointed by the Central Political and Legal Commission for the fourth time to lecture for more than 1.5 million policemen through the video system in all branches of China.  Mr. Meng Jianzhu, the leader of China's Central political and Law Commission presided over lectures on the spot. Leaders of China's Ministry of Public Security, China's Supreme people's Court, and China's Supreme people's Procuratorate all listened to lectures at the main venue or at a separate venue; more than 1.5 million officers and policemen from the national political and legal system listened to lectures via video system，except the ones their duties. China has been listed in "notorious markets" by (USTR) of the Office of the United States Trade Representative for many years in a row.  As the head and spiritual leader of enterprisers, Mr. Ma Yun, the Defendant here, has been accused by tens of thousands entities.  No matter what the defendant said on the public, he has gone beyond the legal line, directly affecting the principles and standards of a fair trial of plaintiffs and defendants in judicial proceedings.

136. Mr. Ma Yun, the defendant, deeply intervened in the legislation and judicial proceedings through illegal means, he meddled the judgment of litigation of the plaintiff in this case. For example, in the cases of (2016)Zhe 0110 Minchu No. 3388, (2017)Zhe01 Min No. 1253, (2017)ZheMin shen No. 1840, (2014)FoshunfaleminchuZi No. 1490, (2016)Zhe0110 Minchu Zi No. 4505, (2017)Zhe01 Min No. 1009, (2017)Zhe01 Min Zi No. 1253, (2016)Zhe0110 Minchu No. 3385, (2016)Zhe 0110 Minchu No. 4506, (2017)Zhe01 Minzhi No. 1049, (2016)Zhe0110 Minchu 5000.  No. (2016) in the case No.

5003.  The judge ruled that the plaintiff knew or should know that there were problems with the products sold by the relevant shops, and brought lawsuits after purchasing the products on purpose, the purpose of which was obviously for profit, not for normal living consumption; therefore, the Plaintiff, Li haidong, purchased the products solely for profit purposes instead of the purpose of daily consumption, and did not have the status of consumer, as a result, he does not have the right to claim for punitive damages which is offended in the provisions of Consumer Rights and Interests Protection Law.  The judgment issued from the above-mentioned cases and the case of (2015) Hangzhou Yu Minchu No. 987, and (2019) Lu 02 Minzhong No. 263 are obviously unfair.

137.  The defendant's interference in the administration of justice goes from backroom manipulation to obtaining strong endorsement of illegal ACTS from the saic and the Supreme Court (legal letter [2017] no. 181), in the annual report, the defendant gave high praise to the court, Industry and Commerce and other law enforcement authorities, praising the historic breakthrough in the friendship between cat and mouse (supervised and supervised). In "Alibaba Intellectual Property Protection Annual Report. 2017", the Defendant disclosed that in 2017, Aibaba united all sectors of society to achieve a historic breakthrough on crack down online counterfeit goods, and strengthen governance and intellectual property protection. Online counterfeiting has been severely curbed and greatly deterred.  Behind the eye-catching data, there are the attention and efforts of law enforcement departments at all levels, such as the public security bureau, industry and commerce bureau, quality supervision bureau and food and drug administration, to the management of fake goods. It is also the innovation and responsibility of courts and procuratorates at all levels to face the new situation in judicial proceedings.  This year,

both deputies to the National People's Congress, members of the Chinese People's

Political Consultative Conference (CPPCC) and administrative law enforcement agencies

have all called for heavier punishment and higher costs for counterfeiters.

138. On September 19, 2018, China's Supreme Court disclosed the data of online shopping

contract disputes. From 2016 to 2017, there had been 22,500 new cases first brought to

the courts of online, and from 2014 to 2018, it was estimated that there were more than

35,000 cases, in which 70% cases come from T-mall Taobao.

## FIRST CAUSE OF ACTION ON BEHALF OF PLAINTIFF FOR BREACH OF CONTRACT AGAINST ALL DEFENDANTS

139. Plaintiff repeats and re-alleges the allegations contained in paragraph 1-138 hereof as it

set forth fully and at length herein.

140. Plaintiff placed the order online and Defendant accepted the order by shipping the

products according to Plaintiff's requirements.

141. The contractual relationship was established between Plaintiff and Defendant through

their mutual conduct.

142. Defendant claimed that the sofa and bed are true leather and Plaintiffs' intention is to

purchase true and authentic leather.

143. However, Plaintiff paid full price for true leather and Defendant shipped the products

which were materially inconsistent with the description of true leather.

144. As a result, Defendant materially breached contract and Plaintiff suffered large amounts

of loses.

145. Plaintiff is entitled to recover his full purchase price for true leather.

## SECOND CAUSE OF ACTION

## FRAUD AND FRAUDULENT MISREPRESENTATION
### (AGAINST ALL DEFENDANTS)

146. Plaintiff repeat and reiterate paragraphs 1 to 145 as though set out fully herein.

147. Defendants made the false representations described above in support of their scheme to defraud Plaintiffs.

148. Defendants made the false representations described above with intent to deceive Plaintiffs and others.

149. Plaintiffs justifiably relied upon Defendants' misrepresentations.

150. Plaintiffs were directly damaged by their justified reliance and the trust that they placed in Defendants.

## THIRD CAUSE OF ACTION
### UNJUST ENRICHMENT (AGAINST ALL DEFENDANTS)

151. Plaintiffs repeat and reiterate paragraphs 1 to 150 as though set out fully herein.

152. By reason of the forgoing Defendants have received an amount of not less than five hundred thousand dollars from Plaintiffs that Defendants should not have received.

153. By reason of the foregoing, Defendants have been unjustly enriched.

154. Plaintiffs are entitled to the return of all amounts Defendants have been unjustly enriched.

## FOURTH CAUSE OF ACTION
### NEW YORK EXECUTIVE LAW §63 (12) FRAUD
### (AGAINST ALL DEFENDANTS)

155. Plaintiffs repeat and reiterate paragraphs 1 to 154 as though set out fully herein.

156. New York Executive Law §63 (12) prohibits fraud in the conduct of any business, trade or commerce.

157. By reason of the conduct alleged above, Defendants repeatedly engaging in fraudulent acts and practices in connection with the transactions in violation of New York Executive Law §63 (12).

### FIFTH CAUSE OF ACTION
### NEW YORK GENERAL BUSINESS LAW §349
### DECEPTIVE ACTS AND PRACTICES (AGAINST ALL DEFENDANTS)

158. Plaintiffs repeat and reiterate paragraphs 1 to 157 as though set out fully herein.

159. New York General Business Law §349 prohibits "deceptive acts and practices in the conduct of any business, trade or commerce or in the furnishing of any service" in New York State.

160. By acting as "E-Commerce" service providers, Defendants conduct "business" or provide a "service" within the meaning of New York General Business Law §349.

161. Defendant engage in one or more of the above-referenced deceptive acts and practices in connection with the service of being an "E-Commerce" provider.

### SIXTH CAUSE OF ACTION
### NEW YORK EXECUTIVE LAW §63 (12) ILLEGALITY VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW §349
### DECEPTIVE ACTS AND PRACTICES (AGAINST ALL DEFENDANTS)

162. Plaintiffs repeat and reiterate paragraphs 1 to 161 as though set out fully herein.

163. A violation of state law constitutes illegality within the meaning of New York Executive Law §63(12) and is actionable thereunder when persistent or repeated.

164. Defendants' repeated and persistent violation of GBL Article 22-A, §349 are thus violations of New York Executive Law §63(12).

165. By reason of the conduct alleged above, Defendants repeatedly and persistently engaging in illegality in violation of New York Executive Law §63(12).

## SEVENTH CAUSE OF ACTION
## BREACH OF CONTRACT BY DISCLOSING PRIVACY INFORMATION OF PLAINTIFF WITHOUT CONSENT AGAINST ALL DEFENDANTS)

166. Plaintiffs repeat and reiterate paragraphs 1 to 165 as though set out fully herein.

167. When Plaintiff created his T-mall user account on T-mall's official website, he was provided an online Privacy Policy from T-mall, the same is provided to all T-mall potential account users before their commencing of registration.

168. By clicking "consent" bottom to the Privacy Policy and completing registration of the user account, Plaintiff and Defendants mutually agreed on the before-mentioned Privacy Policy to be binding as part of Taobao's service contract to Plaintiff.

169. The contractual relationship was established between Plaintiff and Defendant through their mutual conduct.

170. Plaintiff provided his privacy information to Defendants while registration and while using T-mall platform to purchase orders.

171. Defendants disclosed Plaintiff's privacy information without Plaintiff's consent to unauthorized third parties.

172. Defendant materially breached their Privacy Policy and the service contract with Plaintiff, and Plaintiff suffered large amounts of loses.

173. As a result of Defendant's breach, Plaintiff is entitled to recover a money judgement in an amount to be determined by the trier of fact plus punitive damages.


WHEREFORE, Plaintiffs demand relief as follow:

1. On the First Cause of Action a money judgement in an amount to be determined by *the trier of fact, but which is at least five hundred thousand dollars ($500,000) plus* punitive damages;

2. On the Second Cause of Action a money judgement in an amount to be determined by the trier of fact plus punitive damages;

3. On the Third Cause of Action a money judgement in an amount to be determined by the trier of fact, but which is at least five hundred thousand dollars ($500,000) plus punitive damages;

4. On the Fourth, Fifth, Sixth and Seventh Cause of Action a money judgement in an amount to be determined by the trier of fact plus punitive damages.

5. Interest, Costs, and attorneys' fees, along with such other and further relief as the Court deem just.


Dated: New York, New York
December 17, 2019




HAIDONG LI, Plaintiff
50 Bayard St, Apt 2R,
New York, NY 10013
T: (929)369-7978
E: li375138542@gmail.com

## PLAINTIFF'S CERTIFICATION

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I agree to notify the Clerk's Office in writing of any changes to my mailing address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

 Each Plaintiff must sign and date the complaint. Attach additional pages if necessary.

Plaintiff's Print Name: LI, HAIDONG (Last Name, First Name)

Address: 50 Bayard, Apt 2R, New York, NY10013

Telephone No.: 929-369-7978

E-Mail: li375138542@gmail.com

Dated: 12 / 12 / 2019

Plaintiff's Signature: